WILLIAM E. LLOYD v. R. E. LLOYD AND R. W. JONES.

*Damages, Measure of.*

It is the duty of one injured in his estate by the fault of another to use all reasonable means to protect himself against injurious consequences; thus, the defendant obstructed the plaintiff's drain, and the plaintiff could have indemnified himself for $25.00, but by delaying to repair, the damages amounted to $100.00; *Held*, that the legal measure of damages was $25.00.

TRESPASS on the case for obstructing a drain. Heard on a referee's report, September Term, 1887, ROWELL, J., presiding. Judgment for the plaintiff to recover $100.00 and costs.

It appeared that the parties to this suit occupied and worked under leases certain slate quarries, which were near each other; that there was a natural descent and flow of the surface water from the premises described in the plaintiff's lease on to the premises described in the defendant's lease, and there was no other natural outlet for it; that the quarries were on the same farm, and the plaintiff's lease was executed several years prior to the defendant's, and by its terms he had the " right of draining said quarry." It also appeared, that the plaintiff built a covered underground stone drain from his quarries in the same general direction the water had been accustomed to flow, and had used it for some fifteen years for carrying off the water.

The referee found:

" The defendants also opened quarries on their premises and laid a drain from one of them into this drain of the plaintiff, but on the land of the defendants and extended said covered drain some distance on their premises. And from the outlet of this extension the plaintiff and defendants united and built an open drain for further distance on the defendants' land. And thus both parties in harmony used said drain for draining their respective quarries.

" About two years ago the defendants desiring to make a new opening at or near the outlet of said drain as it had been built as aforesaid, found it necessary to turn the water from the end of the covered drain in another direction on their premises so that it would not interfere with said new opening.

" They therefore without consulting the plaintiff filled up said open portion of the drain which the parties had built jointly as aforesaid and dug another open drain from the end of the covered drain in a different direction but did not make it as low as the covered drain was at its outlet. At that point the said former open drain had got filled up somewhat by the cattle crossing it and standing about it for a drinking place, and the water coming out of the covered drain rose or boiled above the mouth, more or less and flowed off.

" This filling up had not up to that time so obstructed the drain as to seriously impede its use.

" The substance filled in was probably loose and soft and the water worked through it. As soon as the defendants made this change in that portion of the drain, said covered drain failed to carry off the water from the plaintiff's quarry, as it had previously done and the plaintiff was put to expense and suffered damage.

\*	\*	\*	\*	\*

" It is impossible to be certain about the underground obstructions and percolations of water. Without attempting to account for the large increase of water in the plaintiff's quarry after said change in the drain by the defendants, we are fully satisfied it did not wholly or in very large degree come from the obstruction made by the defendants, but did somewhat and we find the damage resulting to the plaintiff, therefrom, and not from other causes, was $100.00.

" We also find that the plaintiff might have gone on and sunk the new drain made by the defendants as aforesaid, below the outlet of the covered drain at an expense not exceeding $25.00. It did not appear that the defendants objected to his doing so."

*G. M. Fuller* and *R. C. Abell*, for the defendants.

The drain may be divided into three sections,—the upper end built by the plaintiff; the middle part, built by the defendants; and the open drain built by them jointly. The defendants were under no obligation to keep the middle sec-

tion open.   If the. plaintiff is entitled to recover anything, it is only the $25.00, the cost to secure the required drainage. He is not justified in waiting, and then ask pay for injuries that he could have prevented.   *Keyes* v. *Western Vt. Slate Co.* 34 Vt. 186 ; *Eureka Marble Co.* v. *Windsor Manf'g Co.* 51 Vt. 170.

*Bromley & Clark* and *C. H. Joyce*, for the plaintiff.

An action on the case can be maintained by one tenant in common against l is co-tenant for a misuse or injury of the common property, but not a total destruction of it.   1 Chit. Pl. 79 ; *McLellan* v. *Jennes*, 43 Vt. 183 ; *Booth* v. *Adams*, 11 Vt. 156.

The opinion of the court was delivered by

Powers, J.   The plaintiff suffered damage by the wrongful obstruction of his drain.   " He might have gone on and sunk the new drain made by the defendants as aforesaid below the outlet of the covered drain at an expense not exceeding $25," says the referee.

Without taking this precaution he was damaged $100. Which sum is recoverable upon the facts stated in the report? for it is clear that a liability is established.

The general rule is that a plaintiff, suffering damages by the fault of the defendant, may recover the full amount of his damage.   But this rule is modified, if the plaintiff's negligence or misconduct has aggravated or increased such damage..

It is the duty of a person injured by the fault of another to use all reasonable means to protect himself against injurious consequences.   If injured in his person he must attend to his cure.   If injured in his estate he must attend to its preservation.   If he fails in this duty he cannot gather the fruits of his own negligence.

The plaintiff could have indemnified himself at an expense of $25.00, and this is the legal measure of his damage.   *Bardwell* v. *Jamaica*, 15 Vt. 438.

Judgment reversed and judgment on the report for the plaintiff for $25.00, and interest from filing of report.