DAVID G. BROWN *v*. HENRY G. SUTKOWSKI.

(91 A2d 556)

February Term, 1952.

Present: SHERBURNE, C. J., JEFFORDS, CLEARY, ADAMS and CUSHING, JJ.

Opinion Filed October 7, 1952.

*Clayton H. Kinney* for the defendant.

*Bloomer & Bloomer* for the plaintiff.

CUSHING, J.   This is an action to recover for injuries received in an automobile accident which occurred in the early evening of November 27, 1950.   The plaintiff was a passenger in the front seat of a Ford sedan which had stopped at a railroad crossing to let a train pass.   Just as the train passed the Ford was run into in the rear by a car operated by the defendant, forced forward about twenty-five feet and off the road into the crossing signal post with sufficient force to crumple its front right end.   Trial by jury resulted in a verdict and judgment for the plaintiff to which the defendant has excepted.

As a result of the accident the plaintiff sustained a fracture of the right leg close to the hip. He was taken to the Rutland Hospital where he was confined for ten weeks until February 3, 1951. His leg was operated on and a metal band was used to hold the fractured bone in position until healed. X-rays show a good union, but the leg has been permanently shortened approximately an inch and a half. After his return home the plaintiff used crutches for four to six weeks, and it was over two months before he was able to do any work.

At the time of the accident the plaintiff and his wife owned and operated a small restaurant which had been open about three years. They employed one waitress. They kept it open from 7 to 11 in the morning for breakfast, from 4 to 9 in the evening for dinner, and they planned to keep open in the winter until midnight. There was no evidence as to the profit of the venture but the plaintiff testified that he figured his time and everything worth ninety dollars a week if he had hired it done and that his time was fairly and reasonably worth that amount. After his injury the restaurant business slackened off because his wife could not put in the hours alone.

About two months after his discharge from the hospital plaintiff returned to help in the restaurant, he could not stand any length of time, had to do light work, and washed dishes sitting down. He valued this work at about twenty-five dollars a week if he had to hire it done. On May 13, 1951, he went to work for the Lincoln Iron Works as a helper on the night shift from 6 P. M. until 7 A. M. for six nights a week at an average pay of seventy-five dollars a week. He had had no experience in this kind of work. There was not much lifting but quite a bit of shoveling. It was slow work because he could not move as fast as the others, and they let him go a little slower because they knew of his "game" leg. Because the surface on which he worked was sand he got along all right.

After working four weeks at the Lincoln Iron Works the night shift was laid off and on June 18, 1951 he went to work for the Vermont Marble Company as a helper in the machine shop at fifty dollars a week, where he was employed at the time of the trial. His work here was on a hard level surface and it made his leg ache terribly and bothered his back. He testified that he could partly get by on the job. The shortening of the leg bothered his back because it threw him "off side." That was the cause of most of the resulting

pain.  On Saturday, June 23, upon the advice of a doctor, he had an inch lift put on the heel of his shoe and had the sole raised a little, and was told that if it bothered his arch and leg the sole would have to be raised more.  On the following Tuesday, June 26, 1951, he testified that he was trying it out.

In the instant case it is self evident that the shortening of the plaintiff's right leg would react adversely upon his back when walking or standing.  He testified that that was the cause of most of the pain that came from the shortening of his leg.  It is a matter of common knowledge that those with one leg shorter than the other frequently use a shoe with a high heel and a thick sole for the purpose of equalizing the length of their legs and preventing or alleviating just such discomfort as the plaintiff has experienced.  Since it was the duty of the plaintiff to use all reasonable means to protect himself against the injurious consequences of his injury, *Lloyd* v. *Lloyd,* 60 Vt 288, 13 A 638, it was his duty to try any reasonable appliance, such as the lift on the heel and sole of his shoe, to help him to stand and walk more comfortably.  At the time of the trial he had been trying this out for only three days, but there was no evidence of the result, and it was undoubtedly too early to observe what the effect would be with certainty, but the advice of the doctor and common experience would indicate the probability of much help.

The fact that on a sand surface he was able to get along all right at the Lincoln Iron Works, working 78 hours a week at unaccustomed work only a month after he was able to work at all, indicates that he had a pretty good right leg.  When he started to help in the restaurant it was the first work that he had been able to do.  Although he experienced considerable pain, his later getting along all right at the Lincoln Iron Works and the probability of help from the lift on the heel and sole of his shoe and of more improvement in the usefulness of his leg, would warrant the belief that he would be able to do what he had previously done at the restaurant or to work at the Marble Company without discomfort.

During the trial plaintiff was asked why he went into other work instead of going back into the restaurant business.  He answered: "Well, one thing, we carried first and third class license.  We'd worked up a very good business for people with cocktails and dinners.  When we came to renew the license it was a little more than we could afford.  We had to drop it."  If the volume of the business

did not warrant the payment of license fees of $375 there is grave doubt as to plaintiff's estimate of his worth to the business being ninety dollars a week. His income was what the restaurant business yielded him after all expenses and a fair return on the investment.

At the time of trial plaintiff was 6 feet 6 inches tall and weighed 220 pounds. He was 38 years old and had a life expectancy of 28.96 years.

The court charged the jury that if the plaintiff was entitled to recover it could include in its verdict any loss of future earnings and that it should consider how much less, if any, the plaintiff will be able to earn in the future by reason of his physical incapacity. To this portion of the charge the defendant excepted on the ground that there was not sufficient evidence to warrant the submission of that element of damages. Loss of earning capacity is a proper element of damage in such case. *Lincoln* v. *C. V. Ry. Co.,* 82 Vt 187, 198, 72 A 821; *Baldwin* v. *Gaines,* 92 Vt 61, 73, 102 A 338. But this element, like any other, must be proved, and enough facts must be shown to enable the jury to make an intelligent determination of the extent of this loss. Ordinarily with an adult, this is to be shown by proof of what the party earned before the injury and what he has been earning since. *Baldwin* v. *Gaines, supra.*

In the latter case the evidence showed that the plaintiff was a traveling salesman; that he had to walk a good deal and carry his samples; that since his injury he had been lame and suffered much pain; that he had been unable to carry his samples and get around as before; that for this reason his employer had cut down his territory but that his salary was just what it was before the accident. This Court held that the above evidence, standing alone, was an inadequate and insufficient basis for submitting loss of future earnings as an element of damages, because it did not afford the means of an intelligent estimate of the amount the assessment ought to include on this account.

In *Clark* v. *Demars,* 102 Vt 147, 146 A 812, the holding is to like effect. The plaintiff worked for the same employer and received the same wages before and after the accident. His evidence tended to show that he was unable to do as much work after his injuries, in that he was unable to climb poles, and found it difficult to do other species of work, so that since the accident his work was of a lighter character.

The plaintiff calls our attention to the following from 15 Am Jur, Damages § 96: "One may recover any pecuniary loss sustained by reason of the suspension of his personal direction of, and attention to, his business during his absence on account of his injuries, and because of his decreased ability to give it such direction and attention after he returned to work and in the future. If the business could not be continued with the same success after the injury, as before, a fair compensation may be made for loss of his earning power if it can be fairly and approximately measured." Viewing the evidence in the light most favorable to the plaintiff we do not think that the jury, as of the date of the trial, could fairly and reasonably find that the restaurant business could not be continued with the same success as before he received his injury. Nor could they so find that he will earn less at the Marble Company because of his injury than he otherwise would.

On a retrial of this case sufficient time will have elapsed to determine with greater certainty whether or not the plaintiff has suffered any permanent loss of earning capacity The size of the verdict indicates that the jury must have included damages for loss of future earnings. It was prejudicial error to submit that element of damages to the jury and the defendant's exception must be sustained.

The defendant concedes that there was evidence from which the jury could find that the plaintiff was free from contributory negligence and that the defendant was guilty of negligence. From an examination of the transcript we are satisfied that at a retrial the jury would be bound to find that the defendant was negligent and that his negligence was the sole proximate cause of the injury.

The above holding makes it unnecessary to comment upon defendant's exceptions to the denial of his motion to set the verdict aside and for an order requiring the plaintiff to file a remittitur.

*Judgment as to liability affirmed. Judgment as to damages reversed and cause remanded for retrial on that issue only.*