### Ferrisburgh Realty Investors v. Robert A. Schumacher and Bonnie L. Schumacher

[992 A.2d 1042]

No. 08-077

Present: **Reiber, C.J., Johnson, Skoglund and Burgess, JJ., and Davenport, Supr. J., Specially Assigned**

Opinion Filed February 4, 2010

*David J. Shlansky* and *Douglas D. Le Brun* of *Shlansky & Co., LLP*, Vergennes, for Plaintiff-Appellant.

*Christina A. Jensen* of *Lisman, Webster & Leckerling, P.C.*, Burlington, for Defendant-Appellee.

¶ 1. **Skoglund, J.** Developer Ferrisburgh Realty Investors (FRI) appeals from the trial court's decision, following a jury verdict, in this contract dispute. Landowner Robert Schumacher cross-appeals.[1] FRI argues that the court erred by: (1) denying its request to allow certain claims to go to the jury; (2) refusing to allow it to amend its complaint to add a new claim; (3) reducing the jury's award of damages; and (4) denying its request for injunctive relief. Landowner asserts that the court erred in: (1) finding an enforceable contract; and (2) upholding the punitive damages award. With the exception of a revision to the jury award for breach of contract, we affirm.

¶ 2. The record indicates the following. John and Irene Pierce own a large tract of land in Ferrisburgh, Vermont, formerly used as a farm. Mr. Pierce stopped farming in 1988, and the Pierces began selling off their land to support their retirement. In 1995, Schumacher bought a building lot from the Pierces, which he later sold. In 1999, Schumacher approached the Pierces, seeking to purchase another lot. Mr. Pierce allowed Schumacher to choose any ten-acre parcel on his property, and Schumacher chose a parcel surrounded by the Pierces' remaining land.

¶ 3. In late 1999, the parties entered into a purchase and sale agreement for this parcel. The agreement did not include any financing terms, although Mr. Pierce orally agreed to finance the sale. Closing took place approximately one month later. At that time, Schumacher signed a promissory note and a mortgage through which Mr. Pierce would provide financing. Schumacher also executed the following supplemental agreement:

> In partial consideration of the conveyance this date to Robert A. Schumacher and Bonnie L. Schumacher of certain lands located in North Ferrisburgh, Vermont, said lands being adjacent to other lands formerly of John C. Pierce and Irene P. Pierce and currently mortgaged to John C. and Irene P. Pierce;

---

[1] Bonnie Schumacher is not a party to this appeal. We thus largely refer only to Robert Schumacher's actions.

Robert A. Schumacher and Bonnie L. Schumacher, their heirs and assigns, acknowledge that they have been informed that the adjacent lands may be proposed as a golf driving range and other adjacent lands used in connection with a previously permitted golf course and residential housing development;

NOW, THEREFORE:

Robert A. Schumacher and Bonnie L. Schumacher, their heirs and assigns, covenant and agree not to oppose the use of said lands for the purposes aforesaid and the reasonable application of pesticides in connection with the use and development of a golf course on lands adjacent to those conveyed this date to Robert A. Schumacher and Bonnie L. Schumacher.

This agreement underlies the dispute here.

¶ 4. The golf course project did not come to pass, and in June 2004, the Pierces agreed to sell FRI approximately 190 acres of their land on which FRI intended to create a planned residential development (PRD). The agreed purchase price was $1,500,000, with $1,000 down and a $2,500 payment four times per year. The parties agreed that FRI would have a two-year "study period," and closing was to occur within that two-year period. FRI's obligation to close was conditioned on, among other things, obtaining all permits and other plans, agreements, applications and other state or town requirements for the recordation of the subdivision plat. The parties amended this agreement numerous times.

¶ 5. FRI developed a preliminary plat plan and began to apply for the permits necessary for its project. Schumacher approached both Mr. Pierce and FRI seeking to buy additional lots in the project area, but he was refused. Schumacher subsequently attended town planning meetings and opposed the PRD project. In January 2006, the Ferrisburgh Planning Commission granted final plat approval to the proposed subdivision and PRD applications. Schumacher appealed this decision to the Environmental Court, and the court upheld the permit in early 2007. Schumacher then appealed to this Court. In August 2008, we affirmed the Environmental Court's decision. *In re Pierce Subdivision Application,* 2008 VT 100, 184 Vt. 365, 965 A.2d 468.

¶ 6. In early 2006, during the permitting and appeal process, FRI learned of the supplemental agreement between the Pierces and the Schumachers. In August 2006, FRI and the Pierces sued the Schumachers for breach of contract and breach of the covenant of good faith and fair dealing. Plaintiffs sought injunctive relief as well as compensatory, consequential, and punitive damages. On the same day the complaint was filed, the Pierces assigned to FRI:

> any and all manner of actions, causes of action, suits, damages, judgments, claims or demands whatsoever, in law or in equity, accruing against Robert A. Schumacher and Bonnie L. Schumacher as a direct and proximate result of their execution of a Supplemental Agreement with John C. Pierce and Irene P. Pierce dated November 12, 1999 wherein the said Schumachers promised, in part, not to oppose the use of lands currently under contract with Ferrisburgh Realty Investors, LLC for purposes of residential development.

The Pierces were later dismissed from the case at their request in May 2007.

¶ 7. In August 2007, a jury trial was held. As relevant here, FRI sought damages for its own alleged injuries as well as damages on behalf of the Pierces. FRI's theory of recovery for its own damages is not particularly clear. FRI's counsel suggested at trial that, by virtue of the assignment from the Pierces, it had acquired not only the right to recover damages incurred by the Pierces, but also its own right to enforce the order as of the date of the assignment. FRI later asserted that it was a third-party beneficiary of the agreement between the Schumachers and the Pierces. In the end, the court did not allow FRI to seek damages on its own behalf, finding its allegations of lost profits too speculative. The court did allow FRI to seek damages on behalf of the Pierces pursuant to the assignment noted above. The jury subsequently awarded FRI $120,000 for breach of contract, $735,000 for breach of the covenant of good faith and fair dealing, and $35,000 in punitive damages.

¶ 8. Following the verdict, Schumacher moved for judgment as a matter of law, or alternatively, a new trial. He asserted that the jury award must be vacated because (1) the supplemental agreement was invalid because it was not supported by any consider-

ation; and (2) the damage awards were not supported by the evidence. FRI opposed these arguments and moved for a permanent injunction barring the Schumachers from violating the agreement in the future.[2]

¶ 9. The court revised the jury award, but otherwise denied the parties' requests. As an initial matter, it found the supplemental agreement supported by adequate consideration. The court explained that owner-financing had not been included in the written purchase and sale agreement between the Pierces and the Schumachers. Although the parties had an oral agreement on this issue, it was unclear if this promise, which involved the sale of land and which did not appear to be supported by any consideration in itself, would have been enforceable had Mr. Pierce changed his mind. There was conflicting evidence as to whether Mr. Pierce extended financing in exchange for the execution of the supplemental agreement. While the jury could have found that the Pierces gave the Schumachers nothing in exchange for the supplemental agreement that the Schumachers were not already getting, the court found that Mr. Pierce's testimony also supported a contrary finding — that he went through with owner-financing, which he was not bound by contract to do — only because of the supplemental agreement. The court thus concluded that a valid agreement existed.

¶ 10. Turning to the damages award, the court found that the evidence supported only $55,000 in damages for breach-of-contract, and it revised the jury award accordingly. This figure was based on a loss to the Pierces of the use of the $1,500,000 during the eighteen-month delay caused by Schumacher's actions. Mr. Pierce testified that he would have invested this money in treasury bonds at a 4% rate of return, which amounted to $90,000. The court then subtracted $35,000 from this amount, the amount FRI had already paid to the Pierces on the contract.

¶ 11. The court eliminated the award for breach of the covenant of good faith and fair dealing, finding it without any evidentiary

---

[2] We note that this case appears to have been litigated in a very inefficient and confusing manner. Schumacher alleged at trial that the supplemental agreement was not supported by any consideration — a potentially dispositive question of law that could have been addressed in a pretrial motion. FRI, for its part, did not explain in its complaint the specific basis on which *it* was entitled to relief (as distinct from the Pierces). The court allowed FRI to present evidence to support its "lost profits" theory, but then did not submit FRI's claims to the jury. As a result of this process, the record and the parties' arguments are very muddled.

basis. It reasoned that the jury must have mistakenly looked beyond the assignment of rights in reaching its decision because the only evidence of such large monetary damages was that offered by FRI regarding its "lost profits." The court upheld the punitive damages award, however, finding evidence to show that Schumacher acted intentionally and maliciously to harm the Pierces out of spite when he was denied a building lot that he desired. Finally, the court denied FRI's request for injunctive relief, reasoning that FRI had adequate remedy at law for future violations of the agreement. This appeal and cross-appeal followed.

¶ 12. At the outset, we must clarify FRI's interest in this litigation. FRI was not a party to the contract between the Pierces and the Schumachers. FRI did not allege in its complaint nor did it present any evidence or case law to support its bare assertion at trial that it was an intended third-party beneficiary of this contract (as opposed to an incidental beneficiary). See, e.g., *McMurphy v. State*, 171 Vt. 9, 16, 757 A.2d 1043, 1049 (2000) (determination of whether party may be classified as third-party beneficiary, as opposed to incidental beneficiary, is based on original contracting parties' intention, and parties must have intended to directly benefit third party or to confer private right of action upon that party). The Pierces did not assign the contract to FRI. Instead, on the date the complaint was filed, the Pierces assigned to FRI "any and all manner of actions, causes of action, suits, damages, judgment, claims or demands whatsoever, in law or in equity, accruing against" the Schumachers as a direct and proximate result of the Schumachers' execution of the supplemental agreement. This assignment does not provide the basis for FRI to seek damages for injuries that *it* allegedly suffered due to a breach of contract or breach of the implied covenant of good faith and fair dealing. FRI stands in the shoes of the Pierces, and the Pierces could not assign any rights they did not possess. See, e.g., *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 107 (2d Cir. 2008) ("Courts may permit a party with standing to assign its claims to a third party, who will stand in the place of the injured party and satisfy the constitutional requirement of an 'injury-in fact.' ").

¶ 13. Because there was no legal or evidentiary basis on which FRI could recover damages in this case for its alleged injuries, the court did not err in refusing to submit FRI's claims to the jury. Even if Schumacher did not raise this specific argument at

trial, it is well-settled that this Court can affirm the trial court's decision on any ground. *Bloomer v. Gibson*, 2006 VT 104, ¶ 26 n.4, 180 Vt. 397, 912 A.2d 424. Given our conclusion, we need not address FRI's assertion that the court erred in concluding that its alleged damages were too speculative for the jury's consideration.

¶ 14. We turn next to FRI's assertion that the court erred in denying its motion to amend. FRI sought to add an abuse of process claim to its complaint. FRI argues that its request should have been granted because it could have completed discovery on this claim prior to the rescheduled jury draw, and because this claim might now be barred by the doctrine of res judicata.

¶ 15. As FRI acknowledges, the trial court has discretion in ruling on motions to amend. *Lillicrap v. Martin*, 156 Vt. 165, 170, 591 A.2d 41, 44 (1989) ("Whether an amendment should be permitted is an issue addressed to the sound discretion of the trial court. We will reverse the action of the trial court on such rulings only where there is an abuse of discretion."); V.R.C.P. 15(a) (party may amend pleading once as matter of course before a responsive pleading is filed; otherwise, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires"). We find no abuse of discretion here.

¶ 16. The record shows that FRI sought to add this claim in April 2007, seven months after its original complaint was filed. Shumacher opposed FRI's request, asserting that trial should not be postponed further. The jury draw had already been continued once in March 2007, after FRI's counsel withdrew just before trial with FRI's approval. The court warned FRI at that time that that it needed to obtain new counsel quickly and that the May jury draw would not be rescheduled due to last-minute requests. Nonetheless, at FRI's request, the court again postponed the jury draw to August, this time to allow FRI's new counsel additional time to prepare the case. The court did not err in refusing to postpone the proceedings further to accommodate FRI's desire to add a new claim. See *Colby v. Umbrella, Inc.*, 2008 VT 20, ¶ 4; 184 Vt. 1, 955 A.2d 1082 (denial of a motion under Rule 15(a) may be justified based upon a consideration of undue delay, among other factors). While FRI now suggests that it could have completed discovery on its new claim before the August jury draw, the court implicitly concluded otherwise. Although FRI disagrees with this

conclusion, it fails to show that the court's decision constituted an abuse of discretion. We reject FRI's assertion, moreover, that the court was obligated to grant its request simply because FRI's new claim might now be barred by the doctrine of res judicata. Crediting this argument would entirely eliminate the trial court's discretion in ruling on motions to amend. The trial court offered adequate grounds for its decision in this case, and we find no error.

¶ 17. We next consider Schumacher's challenge to the validity of the supplemental agreement. Schumacher reiterates his position that the supplemental agreement was invalid because it was not supported by any consideration.[3] He contends that Pierce's oral promise to provide financing could have been enforced, citing *Catamount Slate Prods., Inc. v. Sheldon*, 2003 VT 112, ¶ 15, 176 Vt. 158, 845 A.2d 324. Schumacher thus argues that Pierce's subsequent *written* promise regarding financing could not provide adequate consideration for the supplemental agreement.

¶ 18. As the trial court recognized, the question of "[w]hether there is consideration for a contract is a question of law, not fact." *Lloyd's Credit Corp. v. Marlin Mgmt. Servs., Inc.*, 158 Vt. 594, 598, 614 A.2d 812, 814 (1992). Sufficient consideration may be demonstrated by "[e]ither a benefit to the promisor or a detriment to the promisee." *Id.* In this case, it is undisputed that owner-financing was not part of the written purchase and sale agreement. While Mr. Pierce orally promised to provide financing, that promise was not legally binding. There appears to have been no consideration provided for that oral promise, and because the promise concerned the sale of land, it needed to be in writing. See 12 V.S.A. § 181(5) (no action at law may be brought in cases involving a contract for the sale of land or of an interest in or concerning them "unless the promise, contract or agreement upon which such action is brought or some memorandum or note thereof is in writing, signed by the party to be charged therewith or by some person thereunto by him lawfully authorized"); *Rappaport v. Estate of Banfield ex rel. Hoguet*, 2007 VT 25, ¶ 13,

---

[3] Schumacher did not raise lack of consideration as an affirmative defense in his answer to plaintiff's complaint. Over FRI's objection, however, the court allowed Schumacher to amend his pleadings to conform to the evidence presented at trial. See V.R.C.P. 15(b) (pleadings may be amended to conform to the evidence under certain circumstances).

181 Vt. 447, 924 A.2d 72 ("As a general rule, a contract involving the sale of land or interests therein must be in writing to be enforceable." (citation omitted)); see also *Lambert v. Home Fed. Savings & Loan Ass'n*, 481 S.W.2d 770, 772-73 (Tenn. 1972) ("A mortgage, or a deed of trust, in its legal aspect is a conveyance of an estate or an interest in land and as such within the meaning of the Statute of Frauds.").

¶ 19. We did not hold otherwise in *Catamount Slate Prods., Inc.*, 2003 VT 112, ¶ 15, as Schumacher suggests. In *Catamount*, we considered whether an oral agreement reached during a mediated settlement was binding, focusing on whether the parties intended to be bound absent a final written document signed by both parties. Part of the parties' oral agreement during the mediation concerned a future lease agreement, which, we noted, was subject to the Statute of Frauds. *Id.* ¶ 10. We stated that, as a general matter, "parties to a mediated settlement are free to enter into a binding oral contract without memorializing their agreement in a fully executed document," *id.* ¶ 26, but we concluded that the parties in *Catamount* did not expect to be bound until a final written settlement agreement was drafted and signed. *Id.* ¶ 25. This case plainly was not intended to obviate the Statute of Frauds, and it does not stand for the proposition that oral agreements involving interests in land are exempt from its provisions.

¶ 20. Schumacher's reliance on *Weed v. Weed*, 2008 VT 121, 185 Vt. 83, 968 A.2d 310, is equally misplaced. Schumacher suggests that, as in *Weed*, the parties here did not actually bargain for the consideration at issue because it was previously promised. As stated above, however, the oral promise to provide financing was not put in writing, and thus, it was not enforceable until Pierce's execution of the mortgage and promissory note. While Mr. Pierce's testimony on this point was somewhat contradictory, he did state that he provided financing to Schumacher in exchange for his execution of the supplemental agreement. There is evidence, therefore, that by signing the agreement, the Schumachers benefitted. We thus agree with the trial court that there was sufficient consideration to support the supplemental agreement.

¶ 21. We turn next to the jury awards. FRI argues that the court erred in reducing the award for breach-of-contract from

$120,000 to $55,000. It maintains that the court erroneously used the date of trial as the cut-off date for calculating such damages. FRI states that Schumacher's appeal of the permit application was not concluded until August 2008 (a year after trial), and the jury may have concluded that prospective damages were appropriate on this claim. FRI further argues that the court erred in deducting $35,000 from its revised damage award because such action was barred by the collateral source rule.

¶ 22. On review, we take the evidence in the light most favorable to the prevailing party, disregarding any modifying evidence, and determine if "there is any evidence which fairly and reasonably tends to support the jury verdict." *Turgeon v. Schneider*, 150 Vt. 268, 270, 553 A.2d 548, 550 (1988). As we have explained, there must be sufficient evidence to allow the jury to estimate damages with "reasonable certainty." *Lemnah v. American Breeders Serv., Inc.*, 144 Vt. 568, 580, 482 A.2d 700, 707 (1984). With one exception, we agree with the trial court's decision here.

¶ 23. In support of its theory regarding prospective damages, FRI asserts that the jury "was aware" of the fact that the payment to the Pierces was delayed due to Schumacher's appeal of the subdivision permit. It points to the terms of its contract with the Pierces, as well as Mr. Pierce's testimony that he would not get paid until FRI's permits were in place. It also cites the testimony of FRI's vice president, made in connection with FRI's own claim for damages, that Schumacher's appeal to the Supreme Court was "active." Significantly, however, FRI does not show that it actually sought prospective damages below on behalf of the Pierces. FRI identifies no evidence, moreover, from which the jury could have estimated how long it might take to resolve Schumacher's appeal. Under the circumstances, the jury would have been engaging in pure speculation had it included prospective damages in its calculation.[4] See *Lemnah*, 144 Vt. at 580, 482

---

[4] We note, moreover, that although the court calculated damages from January 2006 — the date that Schumacher appealed the town permit — FRI's own evidence indicated that it did not have all "permits in hand" until mid-to-late 2006, when it obtained its Act 250 permit. Thus, presumably, Schumacher's actions did not cause any delay in the closing, and thus did not cause the Pierces any harm, until this date. Additionally, FRI's vice president testified that as of the date of trial, FRI had obtained both the town permit and the Act 250 permit, although he

A.2d at 707 (general rule for determining damages is that jury should estimate the amount within reasonable limits based upon the evidence before it, and "if there is evidence from which an estimation may be made with reasonable certainty," jury has the authority to make an assessment).

¶ 24. FRI's argument concerning the collateral source rule is equally without merit. According to FRI, because *it* paid $35,000 to the Pierces, and not the Schumachers, the collateral source rule bars deduction of that payment from the damage award. See *Hall v. Miller*, 143 Vt. 135, 144, 465 A.2d 222, 227 (1983) (holding that collateral source rule applied in contract actions, and that defendants could not offset their adverse judgment by the amount that plaintiffs recovered from sources wholly independent from the defendants). The measure of damages in this case, however, was the Pierces' inability to use the funds owed to it by FRI during the delay caused by Schumacher. Because FRI had paid the Pierces $35,000 toward the purchase of this land, the Pierces had the use of this money during the period in question, and they could have invested it in treasury bonds, as they sought to do with the remaining funds. The court did not err by including this payment in its calculation. We agree with FRI, however, that this money should have been deducted from the full payment owed under the contract — $1,500,000 — and not from the $90,000 figure calculated by the court. Thus, the proper award on this claim is $87,900, i.e., $1,500,000-$35,000, multiplied by .04 (the interest rate applicable to treasury bonds as testified by Mr. Pierce), multiplied by 1.5 years. The jury award should be revised accordingly.

¶ 25. FRI next challenges the court's elimination of the award for breach of the covenant of good faith and fair dealing claim. It maintains that the court substituted its judgment for that of the jury; it speculated as to how the jury arrived at its decision; and it presumed that the jury ignored the instructions. In support of its assertion, FRI points to evidence that Schumacher opposed the project only when he was refused the opportunity to purchase lots from FRI. According to FRI, Schumacher's act of depriving the

expressed his understanding that they were not "in effect" because the town permit had not yet been finalized. It is not clear from the record if the town permit was in fact stayed during the pendency of Schumacher's appeal. See V.R.E.C.P. 5(e) (in zoning appeal, court has discretion to issue stay on parties' motion or on its own motion).

Pierces of their money stemmed from Schumacher's own desire for a monetary windfall.

 ¶ 26. We find no error. As we have explained, the covenant of good faith and fair dealing "is an implied promise that protects against conduct which violates community standards of 'decency, fairness or reasonableness.'" *Harsch Props., Inc. v. Nicholas*, 2007 VT 70, ¶ 14, 182 Vt. 196, 932 A.2d 1045 (quotation omitted). "A breach for violation of the implied covenant may form a separate cause of action than for breach of contract, as long as the counts are based on different conduct." *Id.* (citation omitted). FRI identifies no conduct distinct from that supporting the breach of contract claim; it focuses solely on Schumacher's motivation for the breach. More importantly, it identifies no evidence in the record whatsoever that would support such a large award of damages. We agree with the trial court that there is no evidentiary basis for this award, and the award was therefore properly vacated.

 ¶ 27. We turn next to the punitive damages award. Schumacher argues that his conduct was not sufficiently egregious to warrant an award of such damages.[5] Schumacher fails to demonstrate that he preserved this argument. He did not raise the issue in his motion for a directed verdict at the close of FRI's case, and he does not show that he raised the issue at trial. Instead, Schumacher appears to have raised the issue for the first time in his post-trial motion for judgment as a matter of law. He thus waived this claim of error. See V.R.C.P. 50(a), (b) (party who believes there is no legally sufficient evidentiary basis for reasonable jury to find for opposing party on certain issue must make motion for judgment as a matter of law before case is submitted to jury, and motion must be renewed post-verdict); *Lemnah*, 144 Vt. at 571, 482 A.2d at 702 (where defendant first challenged punitive damages by motion for judgment notwithstanding the verdict, issue was not preserved for review); see also V.R.A.P. 28(a)(4) (appellant's brief should explain what the issues are, and how they were preserved). Even if this claim had been preserved, however, we agree with the trial court that there was sufficient evidence presented at trial to support the jury's finding of malice,

---

[5] FRI moves to strike portions of Schumacher's argument on this issue. We deny its request as moot.

namely that Schumacher opposed the project out of spite after his own requests to purchase a lot were denied.

¶ 28. Finally, we find no error in the court's denial of FRI's request for injunctive relief. As the trial court recognized, "[a] mere breach of contract is never restrained in advance, or redressed, subsequently, in a court of equity, where the remedy at law is adequate to the injury." *Smith v. Pettingill*, 15 Vt. 82, 85 (1843); see also *Gerety v. Poitras*, 126 Vt. 153, 155, 224 A.2d 919, 921 (1966) ("Equity will not afford relief where there is a plain, adequate, and complete remedy at law. And if the complainant does have such remedy, and the main cause of action is of a legal nature, equity has no jurisdiction." (citations omitted)). FRI plainly has an adequate remedy at law here. The fact that FRI did not adequately establish its own right to damages in this case is of no moment. FRI has been assigned the Pierces' rights under the supplemental agreement. Should the Schumachers again violate the supplemental agreement (putting aside that FRI now appears to have all needed permits), FRI can pursue a legal action at that time, and it may recover damages as it did in this case. None of the arguments advanced by FRI persuade us otherwise.

*Affirmed, with the exception of the revised jury award for breach of contract.*