Filed 07/16/24

VERMONT SUPERIOR COURT

Washington Unit
65 State Street
Montpelier VT 05602
802-828-2091
www.vermontjudiciary.org



CIVIL DIVISION

Case No. 23-CV-00680

Nicole Whalen et al v. Marlin Environmental, Inc.

## Opinion and Order on Hartigan's Motion for Summary Judgment

David Feldman hired Defendant Marlin Environmental, Inc., d/b/a Hartigan and Hartigan Wastewater Services ("Hartigan") to inspect the septic system at the residential property owned by his parents, Fred and Frieda Feldman, to satisfy an inspection contingency in the purchase and sale contract ("P&S") between his parents and Plaintiffs Nicole Whalen and Matthew Whalen.[1] The Whalens claim that Hartigan's performance was deficient, and that deficiency led them to lose the opportunity to effectively negotiate their purchase of the property from Fred and Freida. Specifically, they purchased the property believing that the septic system was served by a functioning leach field when it was not, requiring them to install one at their own expense. They claim against Hartigan breach of the Feldman–Hartigan contract and breach of the covenant of good faith and fair dealing. Hartigan seeks summary judgment as to both claims. It argues that the Whalens were neither parties to the Feldman–Hartigan contract nor third-party beneficiaries with the right to enforce it, and because there is no operative contract, they have no benefit of any covenant of good faith and fair dealing.

---

[1] It is unclear, but immaterial, whether David hired Hartigan or his wife, Rita, did so. For purposes of this decision, the Court presumes that David did. Hartigan invoiced the work to him.

The Whalens do not claim to have been parties to the contract but argue that they are third-party beneficiaries, and thus can enforce it.

## I. Procedural Standard

Summary judgment procedure is "an integral part of the . . . Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Morrisseau v. Fayette*, 164 Vt. 358, 363 (1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)). Summary judgment is appropriate if the evidence in the record, referred to in the statements required by Vt. R. Civ. P. 56(c)(1), shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Vt. R. Civ. P. 56(a); *Gallipo v. City of Rutland*, 163 Vt. 83, 86 (1994) (summary judgment will be granted if, after adequate time for discovery, a party fails to make a showing sufficient to establish an essential element of the case on which the party will bear the burden of proof at trial). The Court derives the undisputed facts from the parties' statements of fact and the supporting documents. *Boulton v. CLD Consulting Engineers, Inc.*, 2003 VT 72, ¶ 29, 175 Vt. 413, 427. A party opposing summary judgment may not simply rely on allegations in the pleadings to establish a genuine issue of material fact. Instead, it must come forward with deposition excerpts, affidavits, or other evidence to establish such a dispute. *Murray v. White*, 155 Vt. 621, 628 (1991). Speculation is insufficient. *Palmer v. Furlan*, 2019 VT 42, ¶ 10, 210 Vt. 375, 380.

## II. Undisputed Facts

The following facts are undisputed. Fred and Frieda Feldman put their Worcester property on the market sometime before July 24, 2017. On July 24, 2017, the Whalens

Order
23-CV-00680 Nicole Whalen et al v. Marlin Environmental, Inc.

Page **2** of **9**

and the Feldmans executed the P&S.[2]  The P&S included numerous inspection contingencies, including one for the septic system.  It reads, in pertinent part: "Seller(s), at their sole expense, shall have the septic tank pumped and inspected by a septic service and will provide Purchaser(s) with written notification of the results of such pumping and inspection . . . demonstrating that the septic tank is in satisfactory operating condition as of the date of such pumping."  David hired Hartigan to perform the inspection.

As to the leach field, the Hartigan agent who performed the inspection put a scope into an outlet pipe but could not see beyond 48 inches because the pipe was crushed.  He thus was unable to examine the leach field, determine in fact whether there was one, and, if so, whether it appeared to be in good working order.  His $175 invoice is the only written evidence of the contract to inspect and the results of the inspection.[3]  In the description field, the only "report" of the results of the inspection, appears this:

> Technician's Comments:
> Tank condition: Appears good.
> Type of Tank: Septic Tank
> Type of Absorption Area: Leaching Field
> Inlet: PVC
> Distance: 12 feet
> Baffles: appear good
> Located D-box: NO
> Condition of outlet: Could only go 48 inches into outlet pipe due to the pipe being crushed.

---

[2] The Feldmans' daughter-in-law, Rita, executed the contract on their behalf under a power of attorney.

[3] The parties variously refer to the invoice and to the report.  The Court understands that the only report of the results of the inspection consists of the inspector's comments on the one-page invoice itself.

The Whalens evidently took this information to mean that the septic system, including its leach field, was in good shape except for the crushed pipe. Based on the results of the inspection, the parties amended the P&S to require Sellers to repair the crushed pipe. The Sellers hired a third-party (not Hartigan) to repair the crushed pipe, no one asked Hartigan to return to complete the inspection, the Whalens agreed that the septic contingency had been satisfied once the crushed pipe had been fixed, and the sale closed.

At some point after moving in and upon investigating occasional offensive odors, the Whalens learned that there was no functional leach field at all. Effluent from the septic tank discharged directly into the yard from the previously crushed pipe. The Whalens then installed a leach field at substantial expense.

The P&S delegated responsibility for having the inspection done to the Sellers. The Sellers satisfied that obligation by contracting with Hartigan. It is undisputed that the Whalens never had any contact with Hartigan. There is no evidence in the record that David Feldman or anyone else ever informed Hartigan that it was performing the inspection to satisfy a contingency in a P&S, that prospective purchasers would see the results, or that prospective purchasers might rely on the results. To be sure, the Whalens allege in the complaint, and reiterate in their answers to interrogatories, that Hartigan knew that it was inspecting for purposes of the sale, and that the Whalens would rely on the results. Their testimony at deposition, though, is crystal clear that they never had any such personal knowledge. They both assumed that David or someone would have so informed Hartigan, but there is no evidence that anyone ever did. And no

one followed up with Hartigan after the initial inspection that was incomplete due to the crushed pipe.

III. Analysis

The parties agree that whether the Whalens are third-party beneficiaries of the inspection contract, and thus have status to enforce it, is a matter of intent. They disagree at to whose intent matters. The Whalens argue that Hartigan's knowledge or intent is irrelevant. Rather, only the intent of the promisee (David in this case) of the underlying contract matters. David obviously hired Hartigan to satisfy the contingency, which was for the Whalens' benefit. So, in their view, they should have the power to enforce the contract. Hartigan argues that it is the mutual intent of both contracting parties that matters. In support of their arguments, both sides rely on, among other things, Section 302 of the Restatement (Second) of Contracts.

Section 302 provides in relevant part as follows:

> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and . . .

> . . .

> (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

The Whalens emphasize that § 302(1)(b) refers exclusively to the intention of the promise (David in this case). Hartigan emphasizes that the first sentence of § 302 plainly refers to the intention of the parties, plural, meaning both parties to the contract.

It is by no means clear that the issue dividing the parties in this case can be resolved merely by reference to the Restatement. As one article describes:

In applying the "intent to benefit" test, courts have disagreed over whose intent governs a third party contract. They have usually focused on the promisee's intentions, but some have emphasized the promisor's intent.

Other courts, however, and at least one commentator, require that both parties to the contract intend to benefit the third party.

The Restatement Second does not resolve this conflict and may, in fact, add to the confusion. It does not clearly indicate whether the promisee's intention alone should govern, or whether courts must require the intention of both the promisor and the promisee before the third party is an "intended" beneficiary. The confusion stems from ambiguity in the language of section 302. In its two-part test for determining when a third party is an "intended beneficiary," section 302(1) refers to the "intention of the parties" under its first requirement, but only to the promisee's intention under subsection b of its second requirement.

Note, David M. Summers, *Third Party Beneficiaries and the Restatement (Second) of Contracts*, 67 Cornell L. Rev. 880, 895–96 (1982) (footnotes omitted); *see also* Howard O. Hunter, *Modern Law of Contracts* § 20:9 ("The second Restatement does not specifically define whose intent controls, stating only that the courts must 'effectuate the intention of the parties.'" (footnotes omitted)).

Other commentators, including the reporter for the Restatement, view the Restatement as establishing a two-part test and the first step requires an agreement among the original contracting parties to benefit a third party. *See, e.g.*, 3 E. Allan Farnsworth, *Farnsworth on Contracts*, § 10.3 (1990) (reporter for the Restatement).

In any event, one need not resort to the Restatement, commentators, or out of state case law to resolve this case. Vermont case law is reasonably clear that the issue of third-party beneficiary status is one of mutual intent of the contracting parties that relies on conventional principles of contract interpretation. As the Court recently summarized:

> *Contracting parties may agree* to create obligations to a third party, which the third party may enforce against the promisor—the party obligated to perform for the third party—if the promisor breaches. In other words, "[a] promise in a contract creates a duty in the promisor to any intended beneficiary to perform the promise, and the intended beneficiary may enforce the duty." Whether a party is an intended beneficiary, and thus has a right to enforce the contract, "*is based on the original contracting parties' intention*," and "[a]s with any contract provision, we first look to the language of the contract provision" to determine what that intent was. If the contract "language is unambiguous, there is no need to consider evidence outside of the writing." The fact that a contract would benefit a third party does not mean the third party has a right to enforce it. Many contracts benefit third parties, but those third parties are treated as incidental beneficiaries unless the contract language specifically indicates an intent to benefit them.

*Sutton v. Vermont Regional Center*, 2019 VT 71A, ¶ 64, 212 Vt. 612, 632–33 (citations omitted; emphasis added); *accord Vermont State Auditor v. OneCare Accountable Care Organization*, 2022 VT 29, ¶¶ 13–14, 216 Vt. 478, 484 (not a third-party beneficiary "unless the contract language demonstrates that the contracting parties intended to benefit that specific third party"); *Hemond v. Frontier Communications of America, Inc.*, 2015 VT 67, ¶ 20, 199 Vt. 272, 280 (determination of third-party status "is based on the original contracting parties' intention" (internal quotation omitted)); *Ferrisburgh Realty Investors v. Schumacher*, 2010 VT 6, ¶ 12, 187 Vt. 309, 316 (similar); *McMurphy v. State*, 171 Vt. 9, 16; *Morrisville Lumber Co., Inc. v. Okcuoglu*, 148 Vt. 180, 184 (1987*)* (similar); *James v. Dufresne Associates, PC*, No. 682-9-12 WNCV, 2014 WL 2565757, at *3 (Vt. Super. May 14, 2014) ("both contracting parties must intend to confer enforceable rights in a third party"). All these cases are on point as to their recitation of the black-letter law on third-party beneficiary principles in Vermont, and all direct the Court's focus, as an initial matter, to the intent of the contracting parties.

The Whalens have come forward with no evidence whatsoever that the contracting parties—David and Hartigan—shared any mutual intent to create any obligation on Hartigan's part benefitting the Whalens. At most, the evidence shows that David engaged Hartigan to perform the inspection due to the inspection contingency. But there is no evidence of any kind to the effect that Hartigan had any clue that in conducting the inspection that it was discharging anyone's obligation to the Whalens, much less that the Whalens would be relying on the results for purposes of the contingency. Had it known that—and intended that—it would have been on notice of the risk of incurring the sort of liability that the Whalens are attempting to impose in this case, and, armed with that notice, it might well have taken more care to report inspection results in a manner that would have been helpful to the Whalens. Or, it may have negotiated a higher price in light of the broader obligation assumed under such a contract. Because there is no admissible evidence that Hartigan had any contracting intent to benefit and be bound to the Whalens, the Whalens have no power to enforce the contract under Vermont law.[4]

The covenant of good faith and fair dealing is inherent in all contracts, but where there is no operative contract, as here, there is no covenant. *See Tanzer v. MyWebGrocer, Inc.*, 2018 VT 124, ¶ 32, 209 Vt. 244, 262. The Whalens' covenant claim fails on that basis.

---

[4] Plaintiff's last-minute attempt to introduce the Affidavit of Rita Ricketson is untimely. Further, even if the Court considered it, it does not provide evidence of Hartigan's intent.

<u>Conclusion</u>

For the foregoing reasons, Hartigan's motion for summary judgment is granted.

Hartigan may submit a form of Judgment.

Electronically signed on Monday, July 15, 2024, per V.R.E.F. 9(d).

_____
Timothy B. Tomasi
Superior Court Judge