Vermont Superior Court
Filed 02/25/26
Addison Unit

VERMONT SUPERIOR COURT
Addison Unit
7 Mahady Court
Middlebury VT 05753
802-388-7741
www.vermontjudiciary.org

CIVIL DIVISION
Case No. 25-CV-04657

**MD Holdings, Inc. v. NextGen Energy & Environmental Solutions LLC et al**

## ENTRY REGARDING MOTION

Title:     Motion to Dismiss Counterclaims (Motion: 2)
Filer:     Justin B. Barnard; Noah A Greenstein
Filed Date:   December 17, 2025

Defendants NextGen Energy Environmental Solutions LLC, D&M Petroleum and EV Solutions LLC, NextGen Equipment LLC, Hannibal Shabo, and Satbir Talwar have filed several counterclaims against Plaintiff M D Holdings, Inc. Broadly speaking, Defendants allege that the conduct of Mark Hamblin, Plaintiff's principal—which conduct they contend should be ascribed, in equity, to Plaintiff—following an April 2023 asset transaction subject of the claims in the underlying action, caused them severe financial damage.

Before the court is Plaintiff's motion to dismiss several counterclaims. Defendants generally oppose. For reasons that follow, the motion is GRANTED IN PART and DENIED IN PART.

### I. Background
### II.

Defendants assert that their counterclaim complaint concerns the same April 15, 2023, asset sale that forms the basis of the underlying action in this matter. They allege:

2. In the April, 2023 asset sale that forms the basis for this action, Third-Party Defendant Mark Hamblin was at all times working in concert with Plaintiff / Counterclaim Defendant.

3. The wrongful conduct of Third-Party Defendant Mark Hamblin should, in equity, be ascribed as well to the Plaintiff / Counterclaim Defendant.

4. Third-Party Defendant Mark Hamblin was, at all times relevant hereto, both a controlling shareholder and an agent of Plaintiff / Counterclaim Defendant.

5. All conduct alleged herein was done by Mark Hamblin as a controlling shareholder and agent of Plaintiff / Counterclaim Defendant.

6. All conduct alleged herein, which was done by Mark Hamblin as a controlling shareholder and agent of Plaintiff / Counterclaim Defendant, was done to intentionally and wrongfully benefit and enrich both Hamblin and Plaintiff / Counterclaim Defendant.

7. The conduct alleged herein was done in bad faith.

8. The conduct alleged herein was done with the intention of wrongfully providing Plaintiff / Counterclaim Defendant and Mark Hamblin the opportunity to either buy back the assets that were conveyed to Defendants, or to take back over the 2 businesses operated by Defendants as a result of the asset purchase orchestrated by Hamblin and effectuated through Plaintiff.

Counterclaims (filed Nov. 26, 2025) at ¶¶ 2–8.  To that end, Defendants bring seven counterclaims: breach of contract (Count I), breach of implied covenant of good faith and fair dealing (Count II),  tortious interference with contractual and prospective business relations (Count III), fraudulent inducement, or in the alternative negligent misrepresentation (Count IV), conversion (Count V), declaratory judgment for setoffs (Count VI), and injunctive relief (Count VII). *Id.*, at ¶¶ 9–36.

Plaintiff marshals various arguments for dismissal of several of the counterclaims.  First, on Counts I, II, and III, Plaintiff argues that the April 2023 asset purchase agreement was between Plaintiff and MD Farm Ventures, on the one hand, and Defendants Shabo and Talwar, on the other.  As such, they argue, corporate Defendants were not parties to the agreement, and because the claims in Counts I through III can only be asserted by parties to the asset purchase agreement, they should be dismissed with respect to corporate Defendants.

Second, Plaintiff asserts that Defendants Hannibal Shabo and Satbir Talwar have failed to plead a breach of contract claim based on a violation of an express contractual provision. Instead, Plaintiff argues, they have pled a breach of implied covenant of good faith and fair dealing claim. See Motion (filed Dec. 17, 2025) at 6–9.  Further, because, by Plaintiff, Defendants' breach of contract claim is based on the exact same factual allegations as their breach of covenant claim, they cannot pursue the same theory under both contract and the covenant. *Id.*, at 9 (citing *Beldock v. VWSD, LLC*, 2023 VT 35, ¶ 52, 218 Vt. 144).

Third, as to fraud, Plaintiff argues that claim fails because Defendants have not alleged any representations that were known to be false to Plaintiff when made.  To the extent that Defendants have alleged that actual financial performance of the business at hand ultimately fell short of Plaintiff's alleged representations, they argue that failing to realize expected revenue cannot support a claim for fraud.

As to the negligent misrepresentation claim pled in the alternative, Plaintiff asserts Defendants have not squarely alleged that Plaintiff provided them false information.  To the extent they have, any allegedly false statement here would have been made during the due diligence period for the transaction.  And because Defendants have not alleged they verified the accuracy of Plaintiff's representations at that time, which, by Plaintiff, they should have, their negligent misrepresentation claim fails regardless.

Lastly, Plaintiff asserts that the claim for injunctive relief fails because it is a remedy, not an independent cause of action.  And even if proper, it fails because Defendants have not

asserted that Plaintiff violated a non-compete clause nor alleged any facts that could make out such a violation, which appears to be the basis for Count VII.

### III. Analysis
#### IV.

Vermont has an "exceedingly low" threshold to survive a 12(b)(6) motion. *Bock v. Gold*, 2008 VT 81, ¶ 4, 184 Vt. 575 (mem.).  Indeed, courts generally disfavor and rarely grant these. *Colby v. Umbrella, Inc.*, 2008 VT 20, ¶ 5, 184 Vt. 1.  In determining whether a complaint survives a motion to dismiss, the court assumes the factual allegations made by the nonmoving party in the complaint are true, and all contravening assertions in the moving party's pleadings are false. *Richards v. Town of Norwich*, 169 Vt. 44, 49 (1999).  The court is generally limited to the allegations and facts as established in a party's complaint, from which the court makes all reasonable inferences. *Montague v. Hundred Acre Homestead, LLC*, 2019 VT 16, ¶ 10, 209 Vt. 514.  To the extent a party asserts "conclusory allegations or legal conclusions masquerading as factual conclusions," the court is not required to accept those as true. *Rodrigue v. Illuzzi*, 2022 VT 9, ¶ 33, 216 Vt. 308 (quotation omitted).

The court will only grant the motion if "it is beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief." *Birchwood Land Co. v. Krizan*, 2015 VT 37, ¶ 6, 198 Vt. 420.  This is because the purpose of a motion to dismiss for failure to state a claim is "to test the law of the claim, not the facts which support it." *Brigham v. State of Vermont*, 2005 VT 105, ¶ 11, 179 Vt. 525 (mem.) (quotation omitted).  A complaint will thus survive if it contains factual allegations supporting each element of the claims asserted. *Colby*, 2008 VT 20, ¶¶ 7, 10.

### a. Breach of Contract

In Count I, Defendants specifically allege that (1) Mr. Hamblin, Plaintiff's principal, while acting in his capacity as Plaintiff's principal, represented himself as the "President" of "D&M Petroleum," Counterclaims, ¶ 12, (2) with the intention "to undermine Defendants' business and to signal to Defendants' customers that he was still in charge, so that when he successfully destroyed Defendants' business he could buy back the assets inexpensively or foreclose and seamlessly resume his role as the leader of the Defendant companies[,]" *id*., ¶ 13, (3) he did so by "canceling projects, urging postponement of scheduled work, ordering parts without authorization, and failing to cooperate in transition and accounting access, causing lost profits and additional costs[,]" *id*., ¶ 14, which (4) "directly and proximately caused severe financial damage to" Defendants, *id*., ¶ 16.  Defendants also do specifically, though conclusorily, allege that some of these action "breached [Plaintiff's] Agreements with [Defendants]." *Id*., ¶ 12.

The asset purchase agreement between Plaintiff and Defendants Hannibal Shabo and Satbir Talwar includes the following provision:

> **14. Covenant Not to Compete** – Mark Hamblin (the "Principal") and Seller shall not, for a period of five (5) years from and after the closing date, (a) directly or indirectly, own or engage in any business within the geographic area defined as the States of Vermont, New Hampshire, New York, and Massachusetts

whose principal purpose is (i) installation and repair of petroleum tanks and dispensing equipment, or (b) directly or indirectly, solicit or encourage (i) any person or entity currently transacting business with Seller to reduce, limit or terminate their business relationship with Buyer or to compete against Buyer or (ii) any employee, officer, manager, director, or independent contractor of Seller who was employed by or engaged to perform services for Seller as of the date of Closing, to terminate or modify his, her or its employment with Buyer.  In addition to any other remedies available to Buyer at law or in equity, and not in lieu thereof, the parties agree that Buyer shall have the right, by injunctive action, to compel Seller and Principals to comply with the terms of the covenant and Seller shall bear and pay, upon demand, all reasonable costs and expenses (including attorney's fees) incurred by Buyer in connection with the enforcement of the covenants.  Seller and the Principals shall execute and deliver a Covenant Not to Compete or Solicit Agreement to Buyer at the closing.  Buyer may set-off against amounts owed to Seller under the Promissory Note in the event Seller or the Principals breach this Covenant Not to Compete or Solicit.

Exhibit A (filed Dec. 17, 2025) at 8 (emphasis in original).[1]

On its face at least, this provision appears to make out a viable breach of contract claim. It explicitly prohibits Mark Hamblin from

directly or indirectly, solicit[ing] or encourage[ing] (i) any person or entity currently transacting business with Seller to reduce, limit or terminate their business relationship with Buyer or to compete against Buyer or (ii) any employee, officer, manager, director, or independent contractor of Seller who was employed by or engaged to perform services for Seller as of the date of Closing, to terminate or modify his, her or its employment with Buyer.

*Id.*

But as Plaintiff observes in its briefing, the asset agreement specifically imposes the obligations not to compete and for post-closing assistance on Mr. Hamblin.  Count I, however, specifically reads that "Hamblin *and* [Plaintiff] breached their Agreements with [Defendants]." Counterclaim, ¶ 14 (emphasis added).  Yet the facts asserted by Defendants describe discrete behavior by Mr. Hamblin only, not by corporate Plaintiff.  "[U]nder Vermont law, an LLC is a distinct legal entity separate from its members." *In re Bourbeau Custom Homes, Inc.*, 2017 VT 51, ¶ 22, 205 Vt. 42.  A corporation, as a legal construct, is "generally independent of the individuals who own its stock even when it is owned by a sole shareholder." *Agway, Inc. v. Brooks*, 173 Vt. 259, 262 (2001) (citation omitted).

---

[1] Upon Plaintiff's urging, the Court has relied on Exhibit A, because the counterclaims rely on and reference its terms. See Motion to Dismiss at 3, n 1 (citing *Sutton v. Purzycki*, 2022 VT 56, ¶ 20, 217 Vt. 326; *In re Russo*, 2013 VT 35, ¶ 16, n.4, 193 Vt. 594; Counterclaims ¶¶ 10–11; and *Vermont Human Rights Com'n v. Vermont Dept. of Human Resources*, 2025 WL 1632083, at *2 (Vt. Super. Ct. Apr. 28, 2025).

Defendants thus appear to suggest that the alleged wrongful conduct of Mr. Hamblin "should, in equity, be ascribed as well to the Plaintiff," as he was, by Defendants, "at all times relevant hereto, both a controlling shareholder and an agent of Plaintiff …." Counterclaims, ¶¶ 3–5.  To be sure, while that is certainly a feasible approach as a matter of principle, see e.g., *Young v. Lamson*, 121 Vt. 474, 476 (1960) ("One of the incidents of the status of principal and agent is the power of the agent to subject his principal to liability for an act done in furtherance of the agency."), whether the court ascribes in equity the behavior of Mr. Hamblin to Plaintiff, the court, as a matter of law, cannot change the language of the agreement and read in a non-compete and post-closing assistance clauses with respect to Plaintiff—clauses that the agreement ostensibly does not include.  Even if the court were to ascribe Mr. Hamblin's behavior to Plaintiff, there is no clause in the agreement that such conduct by Plaintiff would violate.  Accordingly, because Defendants have not alleged how *Plaintiff* breached its obligations in the asset purchase agreement or otherwise, their breach of contract claim necessarily fails at this stage.

More still, as Plaintiff observes, the allegations in the counterclaims resemble more closely a breach of covenant claim.  The covenant of good faith and fair dealing is implied in every contract and protects the parties thereto; it ensures that they "act with faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." *Carmichael v. Adirondack Bottled Gas Corp. of Vt.*, 161 Vt. 200, 208 (1993) (quotation omitted). It is often "violated by dishonest conduct such as conjuring up a pretended dispute, asserting an interpretation contrary to one's own understanding, or falsification of facts." *Langlois v. Town of Proctor*, 2014 VT 130, ¶ 61, 198 Vt. 137 (quotation omitted).  A breach of contract, on the other hand, usually concerns "a failure, without legal excuse, to perform any promise that forms the whole or part of a contract." 23 Williston on Contracts § 63:1 (4th ed.) (footnotes omitted). "Where a party alleges both breach of contract and breach of the implied covenant of good faith and fair dealing, dual causes of action are permitted only where the different actions are premised on different conduct …." *Tanzer v. MyWebGrocer, Inc.*, 2018 VT 124, ¶ 33, 209 Vt. 244.  A separate cause of action for breach of covenant and a breach of contract based upon the same conduct is not allowed. See *Ferrisburgh Realty Inv'rs v. Schumacher*, 2010 VT 6, ¶ 26, 187 Vt. 309.  Here, Defendants' Counts I and II are clearly premised on the same conduct. Compare Counterclaims Count I, ¶¶ 9–16, with Count II, ¶¶ 17–18.  The court would thus not have allowed Defendant's Count I to proceed on that basis, too.

### b. Covenant of Good Faith

In Count II, Defendants plead a breach of implied covenant of good faith and fair dealing. Plaintiff does not challenge Count II on its face, but rather seeks its dismissal with respect to corporate Defendants.  Plaintiff argues that corporate Defendants were not parties to the asset purchase agreement and thus cannot assert a breach of contract claim.  To be sure, "[a] contract may create obligations to a third party, which the third party may enforce against the promisor." *Vermont State Auditor v. OneCare Accountable Care Org., LLC*, 2022 VT 29, ¶ 13, 216 Vt. 478 (citations omitted).  Specific contract language, however, must "demonstrate[ ] that the contracting parties intended to benefit that specific third party." *McMurphy v. State*, 171 Vt. 9, 18 (2000).  The court looks to "the intent of the parties as expressed in the contractual language"

in making that determination. *Hemond v. Frontier Commc'ns of Am., Inc.*, 2015 VT 67, ¶ 20, 199 Vt. 272.

Defendants' breach of covenant claim here alleges Plaintiff's more general conduct and the parties' obligations more broadly, as violations of provisions in "Transaction Documents." Counterclaims, ¶ 18. The counterclaim complaint alleges that corporate Defendants were party to some of those. As such, Plaintiff is on notice of Defendants' breach of covenant claim at this stage.

   c. *Fraudulent Inducement and Negligent Misrepresentation*

To maintain a cause of action for fraudulent inducement, a plaintiff must show "an intentional misrepresentation of existing fact, affecting the essence of the transaction," where "the misrepresentation was false when made and known to be false by the maker, was not open to the defrauded party's knowledge, and was relied on by the defrauded party to his damage." *Union Bank v. Jones*, 138 Vt. 115, 121 (1980). These elements must be pled with particularity. V.R.C.P. 9(b).

When looking at an intentional misrepresentation of existing fact, the court distinguishes statements of fact from statements of opinion. "'[M]isrepresentation of the former can be fraud, but misrepresentation of the latter cannot,' unless the misrepresentation of opinion is part of a scheme to defraud." *Pettersen v. Monaghan Safar Ducham PLLC*, 2021 VT 16, ¶ 20, 214 Vt. 269 (quotation omitted). "Trade talk or 'puffery' are statements of opinion which cannot be the basis of a claim for fraud because 'the truth or falsity of [the statements] cannot be precisely determined.'" *Heath v. Palmer*, 2006 VT 125, ¶ 14, 181 Vt. 545 (mem.) (quotation and citation omitted).

Plaintiff here allegedly misrepresented that $2.761 million worth of work had been "secured" for 2023, but that the "actual realized work" ended up being $2.6 million. Counterclaims, ¶¶ 24–26. That is not enough to support a claim for fraud. C.f. *Pettersen*, 2021 VT 16, ¶ 20 ("[M]ere promises to act in the future cannot constitute the requisite misrepresentation of existing fact that is essential to fraud [unless] there is [a] present intention to act contrary to the promise."). Defendants do not allege that Plaintiff "intended to renege" on the promise "at the time that [it] made it." *Lynn v. Slang Worldwide, Inc.*, 2025 VT 30, ¶ 13. Even at this early stage, absent an express allegation to the effect that Plaintiff made the false promise with a, at the time, present intent to renege on the promise, the fraudulent inducement fails. See V.R.C.P. 9(b).

As to negligent misrepresentation, Defendants' pleadings do not indicate that they could not verify the information provided to them. "Justifiable reliance is a key aspect of a claim of negligent misrepresentation and any complaint must plead facts that support such reliance." *Lynn*, 2025 VT 30, ¶ 19. "[T]he pleading must incorporate some facts based on the representations made or the relationship between the parties that supports justifiable reliance for

purposes of a negligent-misrepresentation claim." *Id*., at ¶ 20.  Defendants' counterclaim complaint does not do this.  Defendants thus fail to state a claim for negligent misrepresentation.

### d. Injunctive Relief

Count VII in Defendants' counterclaim complaint is a request for an injunction.  Because Plaintiff correctly observes that an injunction is a form of relief, a remedy, and not an independent cause of action on its own, see e.g., *Milligan v. GEICO Gen. Ins. Co.*, 2022 WL 433289, at *6 (2d Cir. 2022), it is dismissed.  The court will, however, consider the relief sought in Count VII as incorporated into Defendants' prayer for relief.  This is consistent with the general mandate of V.R.C.P. 8(f) that "[a]ll pleadings shall be so construed as to do substantial justice."

## Order

Based on the foregoing, Plaintiff's motion to dismiss is GRANTED IN PART and DENIED IN PART.

**Signed electronically February 24, 2026 pursuant to V.R.E.F 9(d).**

_____
**David Barra**
**Superior Court Judge**